# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

---

| | |
|---|---|
| **RITA MONTESI,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 12-cv-02399-JTF-tmp |
| **NATIONWIDE MUTUAL INSURANCE** | ) |
| **COMPANY,** | ) |
| | ) |
| Defendant. | ) |

---

## REPORT AND RECOMMENDATION
---

Before the court is defendant Nationwide Mutual Insurance Company's ("Nationwide") Motion for Summary Judgment regarding plaintiff's breach of contract and negligent infliction of emotional distress claims. (ECF No. 23.) Plaintiff Rita Montesi ("Montesi") filed a response in opposition, and Nationwide filed a reply. For the reasons below, it is recommended that Nationwide's motion be granted.

## I. PROPOSED FINDINGS OF FACT

This action arises from a dispute about coverage under an insurance policy for losses incurred in the form of a jury verdict rendered against the insured. Prior to the events giving rise to this litigation, Montesi owned two insurance policies issued by Nationwide: a homeowner's insurance policy and a personal umbrella insurance policy. (ECF No. 1-2 ("Compl.") ¶ 3.) Under the umbrella

policy, Nationwide is obligated to "pay for damages an insured is legally obligated to pay due to an occurrence . . . ." (ECF No. 30 ("Undisputed Fact") ¶ 15.) The umbrella policy defines an "occurrence" as an "accident." (Id. ¶ 16.) The umbrella policy specifically excludes from coverage personal injury "caused intentionally by or at the direction of the insured, including willful acts the result of which the insured knows or ought to know will follow from the insured's conduct." (Id. ¶ 17.) The umbrella policy also excludes from coverage personal injury arising out of libel, slander, defamation or violation of rights of privacy if (1) made by or with the consent of the insured, and (2) made with knowledge of their falsity. (Id. ¶ 18.) The policy defines "personal injury" as including, among other things, "[l]ibel, slander, defamation of character or invasion of rights or privacy." (Id. ¶ 19.)

On October 13, 2005, while both insurance policies were in effect, Montesi engaged in conduct that was construed as defamatory by her nieces, Alicia Wilson and Michelle Hood. (Compl. ¶ 4.) Specifically, Montesi paid for an advertisement in an Alabama newspaper which accused Wilson and Hood of lying about sexual abuse committed by their father, Noah Monroe Tidwell. (Undisputed Fact ¶ 1.) The advertisement addressed the matter of State of Alabama v. Noah Monroe Tidwell, wherein a Colbert County, Alabama jury convicted Tidwell (who is Montesi's brother) of sexual assault and

rape. (Id. ¶¶ 2,4.)  The advertisement taken out by Montesi ran on May 4, 2005, in the *Courier Journal* newspaper, and accused Wilson and Hood of lying regarding the actions of their father.  (Id. ¶ 5.)  In response to this advertisement, Wilson and Hood filed a civil action against Montesi for defamation and other causes of action in the Circuit Court of Lauderdale County, Alabama.  (Id. ¶ 7.)

Montesi requested coverage from Nationwide under both of her policies for the defamation lawsuit.  (Id. ¶ 8.)  Nationwide denied the claim under the homeowner's policy because Montesi did not purchase the optional coverage for libel, slander, and defamation.[1] (Id. ¶ 9.)  Nationwide reserved its rights to deny the claim under the umbrella policy, but it nevertheless provided Montesi with a defense.  (Id.)  During the litigation, Nationwide moved, via separate counsel, for permission to intervene in the lawsuit for the purpose of posing special jury interrogatories.  (Id. ¶ 10.) The court granted the motion to intervene and allowed the jury to consider whether Montesi acted intentionally.  (Id. ¶ 12).  The jury returned a verdict against Montesi.  They found Montesi liable for false light invasion of privacy, and according to the jury

---

[1] Montesi had the option of purchasing specific coverage for "libel, slander and defamation of character" under her homeowner's policy. However, it is undisputed that she did not choose to purchase that coverage.  (Id. ¶ 20.)  It does not appear that Montesi is claiming that her homeowner's policy provides coverage for the judgment in the defamation lawsuit.  She apparently only seeks coverage under her umbrella policy.

-3-

interrogatories, specifically found that she acted negligently, recklessly, and intentionally, and that Montesi made the statements with knowledge of their falsity. (Id. ¶ 22.) The jury found that Montesi defamed the plaintiffs, and in doing so, indicated on the jury interrogatories that she acted "negligently" and "intentionally" and with knowledge of the statements' falsity. (Id.) The Alabama court entered judgment on the verdict and ordered Montesi to pay $20,000 in compensatory damages and $50,000 in punitive damages, consistent with the jury's verdict. (Id. ¶ 13.) Following the Alabama defamation suit, Montesi filed an insurance claim with Nationwide, seeking reimbursement under her policies for the $70,000 loss she incurred. On January 20, 2011, Nationwide issued a final denial of Montesi's insurance claim.[2] (Id. at ¶ 23.) On or before February 8, 2011, Montesi made a formal demand to Nationwide for payment under the policies. (Compl. ¶ 5.) To date, Nationwide has not paid Montesi on her February 8 demand. (Id.)

On April 25, 2012, Montesi commenced the instant litigation by filing a complaint in the Circuit Court of Tennessee. Nationwide removed the case on the basis of diversity jurisdiction to the

---

[2] Montesi apparently disputes this fact, because Nationwide continued to provide her with an attorney under the policy until May 31, 2011. (ECF No. 30 at ¶ 23.) The fact that Nationwide continued to provide Montesi with counsel up until May 2011 does not change the fact that Nationwide made a final decision to deny coverage on January 20, 2011.

District Court for the Western District of Tennessee on May 25, 2012. In her complaint, Montesi claims that Nationwide's failure to pay her insurance claim constitutes a breach of contract, negligent infliction of emotional distress, and a violation of the Tennessee Consumer Protection Act ("TCPA").[3] She seeks statutory damages under the Tennessee bad faith refusal to pay statute ("bad faith statute").[4] Montesi alleges that Nationwide "interjected" itself into the Alabama trial with the specific intent to seek a special jury verdict to nullify her coverage. (Compl. ¶ 7.) Montesi further alleges that Nationwide knew or should have known that she already faced a significant chance of a jury finding against her and "interjected" nonetheless. (Id.) Montesi requests actual damages, the 25% penalty permitted by the bad faith statute, attorney's fees, treble damages, and punitive damages.

Subsequently, Nationwide filed a Motion to Dismiss Plaintiff's Claims for Violations of the [TCPA], Bad Faith Penalties, and Punitive and Treble Damages. (ECF No. 13.) On August 8, 2013, the undersigned Magistrate Judge submitted a report and recommendation, recommending dismissal of the TCPA and bad faith statutory claims. (ECF No. 37.) The District Judge subsequently adopted that recommendation in its entirety. (ECF No. 38). Therefore, the only remaining claims are Montesi's breach of contract and negligent

---

[3] Tenn. Code Ann. § 47-18-101 *et seq.* (1977).

[4] Tenn. Code Ann. § 56-7-105 (2008).

infliction of emotional distress claims. In the present motion, Nationwide moves for summary judgment on those two remaining claims.

## II. PROPOSED CONCLUSIONS OF LAW

### A. Rule 56 Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted if the movant shows that "no genuine dispute as to any material fact" exists, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant can show the absence of a genuine dispute of material fact using "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). The movant carries the burden of proving the absence of a genuine issue of material fact, and all evidence and justifiable inferences are drawn in favor of the non-movant. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Galloway v. Anuszkiewicz, No. 12-3367, 2013 WL 1149679, at *3 (6th Cir. Mar. 21, 2013) ("When determining whether the movant has met [its] burden, we view the evidence in the light most favorable to the nonmoving party."). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., Federal Practice and Procedure § 2727 (2d ed. 1998).

Once the moving party has submitted a properly supported motion for summary judgment, if the non-moving party fails to address the moving party's assertion of fact, the court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Stanciel v. Donahoe, No. 11-11512, 2013 WL 1914314, at *1 (E.D. Mich. May 8, 2013) (same). To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp, 475 U.S. 574, 586 (1986); see also Nilles v. Givaudan Flavors Corp., No. 12-3673, 2013 WL 1272554, at *7 (6th Cir. Mar. 29, 2013) (rejecting the argument that courts must accept any remotely possible hypothetical

that would further the plaintiff's cause).

**B.   Breach of Contract Claim**

To proceed on her breach of contract claim, Montesi must show "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." ARC LifeMed, Inc. v. AMC-Tennessee, Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005). The parties dispute whether Nationwide breached the contract by refusing to pay for the judgment. Nationwide argues that the verdict in the Alabama litigation precludes any claim by Montesi that her actions were covered by her umbrella policy.

Pursuant to the full faith and credit statute, "records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory, or Possession from which they are taken." 28 U.S.C. § 1738. "It is now well settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984); see also Carroll v. City of Cleveland, No. 11-4025, 2013 WL 1395900, at *3 (6th Cir. Apr. 5, 2013) (citing Migra, 465 U.S. at 81). In determining whether a prior state court judgment precludes a claim

raised in a federal action, the federal court must apply the rendering state's law to resolve the question of preclusion. See Carroll, 2013 WL 1395900, at *3 ("This, of course, is a question of state law. We therefore examine Ohio law to determine whether *res judicata* bars Appellants' action."). Therefore, this court must apply Alabama law to determine if the judgment in Montesi's state case has preclusive effect on the issue of whether Montesi's conduct was "intentional," so as to exclude her defamatory conduct from coverage under the policy.

In Alabama, the elements of collateral estoppel, or issue preclusion, are: "(1) an issue identical to the one litigated in the prior suit; (2) that the issue was actually litigated in the prior suit; (3) that resolution of the issue was necessary to the prior judgment; and (4) the same parties." Dairyland Ins. Co. v. Jackson, 566 So.2d 723, 726 (Ala. 1990) (citing Pierce v. Rummell, 535 So.2d 594, 596-97 (Ala. 1988)).

Here, the issue of whether Montesi's conduct was intentional is identical to the one litigated in the prior suit, as evidenced by the jury interrogatory form. (Undisputed Fact ¶ 22.) Furthermore, it is clear that Montesi and Nationwide were parties to both cases. (Id. at ¶¶ 7, 10, 12.) Moreover, the issue was actually litigated in the prior suit. The jury found that Montesi acted negligently and intentionally in defaming the plaintiffs in the defamation suit. (Undisputed Fact ¶ 22.) Montesi claims that

the jury interrogatory form is ambiguous as to which conduct was negligent and which was intentional. However, this argument is undermined by the jury's award of punitive damages, which under Ala. Code § 6-11-20 (2013), could only have been made if the jury found that Montesi "consciously and deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." Such a jury finding necessarily requires a finding that Montesi acted intentionally in causing the injury. Therefore, the issue of Montesi's intent was actually litigated in the prior suit.

The remaining question is whether resolution of the issue was necessary to the prior judgment. To establish a defamation claim in Alabama, a plaintiff need only establish negligent behavior on the part of the defendant. Ex parte Bole, 103 So.3d 40, 51 (Ala. 2012) (quoting Ex parte Crawford Broad. Co., 904 So.2d 221, 225 (Ala. 2004)). However, as mentioned above, the assessment of punitive damages necessarily requires a finding of intentional conduct. Although the finding of intent was not strictly necessary to the prior *cause of action*, it was necessary to the prior *judgment*, which included the award of punitive damages.

Because Montesi's assertion of lack of intent is barred by collateral estoppel, she cannot show that Nationwide's nonperformance amounts to a breach of contract. The personal umbrella policy specifically excludes from coverage personal injury

"caused intentionally by or at the direction of the insured, including willful acts the result of which the insured knows or ought to know will follow from the insured's conduct." (Undisputed Fact ¶ 17.) Here, the Alabama jury found that Monetsi acted intentionally in causing injury to the plaintiffs, and such conduct is specifically excluded from the personal umbrella policy. Therefore, it is recommended that Nationwide's motion for summary judgment on this basis be granted.[5]

**C. Negligent Infliction of Emotional Distress Claim**

Under Tennessee law, a cause of action for negligent infliction of emotional distress has a one-year statute of limitations.[6] Evans v. Walgreen Co., 813 F. Supp. 2d 897, 938 (W.D. Tenn. 2011). Under the discovery rule, a cause of action accrues and the statute of limitations begins running "when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." John Kohl & Co. P.C. v. Dearborn & Ewing, 977 S.W.2d 528, 532 (Tenn. 1998). This does not permit a plaintiff to delay filing suit until all injurious effects are actually known. Id. at 533 ("[T]he fact that

---

[5]Based on this conclusion, the court does not reach the issue of whether any other provision in the policy also excludes Montesi's conduct from coverage.

[6]Neither party disputes that Tennessee's one-year statute of limitations applies.

-11-

the IRS had not taken any formal action against the [plaintiffs] as of that date, such as filing suit against them or issuing a deficiency notice, is largely irrelevant because, as noted above, it was unnecessary for the plaintiffs to have suffered all the injurious effects or consequences of the defendants' negligence in order for the statute to begin running"). Normally, accrual is a question of fact. See Gerdau Ameristeel, Inc. v. Ratliff, 368 S.W.3d 503, 509 (Tenn. 2012). However, when undisputed evidence can lead to only one conclusion, accrual can be a question of law for the court to determine. See Reid v. Baker, No. 10-2413-STA, 2011 WL 976547, at *8 (W.D. Tenn. Mar. 16, 2011), aff'd, 499 F. App'x 520 (6th Cir. 2012).

Nationwide issued its final denial of coverage on January 20, 2011, under the umbrella policy. Montesi alleges that on February 8, 2011, she "made formal demand on Nationwide to pay the policy benefits owed." (Compl. ¶ 5.) Montesi argues, however, that there was no injury until February 28, 2012, when the Alabama Supreme Court denied her appeal of the judgment. (ECF No. 29.) This argument is without merit. Based on the nature of the claim, the relevant injury is the emotional distress caused by Nationwide's denial, not the Alabama Supreme Court's decision. Accordingly, Montesi knew or should have known as of February 8, 2011, at the latest, that Nationwide's denial of coverage injured her such that emotional distress would result. This is supported by Montesi's

Responses to Interrogatories, which indicate emotional distress "since the denial of coverage" (Response to Interrogatory No. 9) resulting from Nationwide's "refus[al] to comply with Rita Montesi's demand to pay." (Compl. ¶¶ 12-13, *see* Response to Interrogatory No. 4.) Because the statute of limitations ran, at the latest, on February 8, 2012, Montesi's negligent infliction of emotional distress claim filed on April 25, 2012, is barred by the statute of limitations. Therefore, it is recommended that Nationwide's motion for summary judgment on this claim be granted.

### III. RECOMMENDATION

For the reasons above, it is recommended that Nationwide's motion for summary judgement be granted.

Respectfully submitted,

<u>s/ Tu M. Pham</u>
TU M. PHAM
United States Magistrate Judge

<u>November 5, 2013</u>
Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, A PARTY MAY SERVE AND FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. FED. R. CIV. P. 72(b)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**